**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILDCAT LICENSING WI LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-839-MN-JLH |
| | ) | |
| FAURECIA S.A., FAURECIA USA HOLDINGS, INC., FAURECIA INTERIOR SYSTEMS, INC., FAURECIA AUTOMOTIVE SEATING, LLC, FAURECIA MADISON AUTOMOTIVE SEATING, INC., FAURECIA EMISSIONS CONTROL TECHNOLOGIES, USA, LLC, FAURECIA EMISSIONS CONTROL SYSTEMS NA, LLC, and FAURECIA AUTOMOTIVE HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| WILDCAT LICENSING WI LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-846-MN-JLH |
| | ) | |
| MAGNA INTERNATIONAL INC., MAGNA INTERNATIONAL OF AMERICA, INC., MAGNA POWERTRAIN INC., MAGNA POWERTRAIN OF AMERICA, INC., MAGNA POWERTRAIN USA, INC., MAGNA SEATING OF AMERICA, INC., MAGNA EXTERIORS OF AMERICA, INC., MAGNA CLOSURES OF AMERICA, INC, and COSMA INTERNATIONAL INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

# **REPORT AND RECOMMENDATION**

As announced at the hearing on December 19, 2019:

1.  I recommend GRANTING-IN-PART and DENYING-IN-PART Magna Defendants' Motion to Dismiss Plaintiff's Complaint (C.A. No. 19-846, D.I. 15):

    a. I recommend DENYING Magna Defendants' motion to dismiss on the basis that the patents-in-suit are invalid as directed to unpatentable subject matter under 35 U.S.C. § 101;

    b. I recommend DENYING Magna Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible direct infringement claim; and

    c. I recommend GRANTING Magna Defendants' motion to dismiss the indirect infringement claims under Federal Rule of Civil Procedure 12(b)(6) without prejudice to amend within 21 days.

2.  I recommend GRANTING-IN-PART and DENYING-IN-PART Faurecia Defendants' Motion to Dismiss and to Strike Portions of the Complaint, or, Alternatively, For a More Definite Statement (C.A. No. 19-839, D.I. 16):

    a. I recommend DENYING Faurecia Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible direct infringement claim;

    b. I recommend GRANTING Faurecia Defendants' motion to dismiss the indirect infringement claims under Federal Rule of Civil Procedure 12(b)(6) without prejudice to amend within 21 days;

        c.        I recommend DENYING Faurecia Defendants' motion to strike the willfulness allegations under Federal Rule of Civil Procedure 12(f); and

        d.        I recommend DENYING Faurecia Defendants' motion for a more definite statement under Federal Rule of Civil Procedure 12(e).

Plaintiff Wildcat Licensing WI LLC ("Plaintiff" or "Wildcat") filed nine patent infringement suits asserting U.S. Patent No. RE47,220 ("the '220 patent") and U.S. Patent No. RE47,232 ("the '232 patent") against defendants involved in manufacturing automobiles and automobile component parts. (C.A. Nos. 19-833, -834, -839, -840, -842, -843, -844, -845, -846.) The defendants in two cases moved to dismiss Wildcat's respective complaints against them. Magna International Inc., Magna International of America, Inc., Magna Powertrain Inc., Magna Powertrain of America, Inc., Magna Powertrain USA, Inc., Magna Seating of America, Inc., Magna Exteriors of America, Inc., Magna Closures of America, Inc., and Cosma International Inc. (collectively, "Magna Defendants" or "Magna") moved to dismiss the operative complaint for failure to state claims of direct and indirect infringement and on the basis that the patents-in-suit are invalid as claiming ineligible subject matter under 35 U.S.C. § 101. (C.A. No. 19-846, D.I. 15.)

Faurecia USA Holdings, Inc., Faurecia Interior Systems, Inc., Faurecia Automotive Seating, LLC, Faurecia Madison Automotive Seating, Inc., Faurecia Emissions Control Technologies, USA, LLC, Faurecia Emissions Control Systems NA, LLC, and Faurecia Automotive Holdings, Inc. (collectively, "Faurecia Defendants" or "Faurecia"[1]) moved to dismiss the operative complaint for failure to state claims of direct and indirect infringement. (C.A. No. 19-839, D.I. 16.) Faurecia Defendants also moved under Federal Rule of Civil Procedure 12(f)

---

[1] Faurecia S.A. is not currently a party because it has not been served yet.

to strike Plaintiff's allegations of willful infringement and request for enhanced damages. In the alternative, Faurecia Defendants moved under Rule 12(e) for a more definite statement. The motions were fully briefed as of August 15, 2019,[2] and October 18, 2019.[3]

The Court referred the cases, including the pending motions, to me. (C.A. No. 19-839, D.I. 24; C.A. No. 19-846, D.I. 18.) I then received further submissions in the Magna case regarding which Supreme Court or Federal Circuit case each side contends is most analogous to the claims at issue as related to the 35 U.S.C. § 101 arguments. (C.A. No. 19-846, D.I. 40, 41.) I carefully reviewed all submissions in connection with Defendants' motions, heard oral argument,[4] and applied the following legal standards in reaching my recommendation:

## I. LEGAL STANDARDS[5]

### A. Motion to Dismiss for Failure to State a Claim

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A possibility of relief is not enough. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

---

[2] (*See* D.I. 17, 19, and 21 in C.A. No. 19-839.)

[3] (*See* D.I. 16, 19, and 27 in C.A. No. 19-846.)

[4] (C.A. No. 19-839, D.I. __ (Transcript); C.A. No. 19-846, D.I. __ (Transcript).)

[5] The legal standards set forth in this Report and Recommendation are derived from my Report and Recommendation in *CoolTVNetwork.com, Inc. v. Facebook, Inc.*, C.A. No. 19-292-LPS-JLH, 2019 WL 4415283, at *3-4, 10-11 (D. Del. Sept. 16, 2019).

4

the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

**B.  Direct infringement**

According to a recent Federal Circuit decision, a complaint sufficiently pleads direct infringement when it puts the defendant "on notice of what activity . . . is being accused of infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)); *see also BioMérieux, S.A. v. Hologic, Inc.*, No. 18-21-LPS, 2018 WL 4603267, at *3 (D. Del. Sept. 25, 2018). There is no requirement that the plaintiff "plead facts establishing that each element of an asserted claim is met." *Nalco*, 883 F.3d at 1350 (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012)).

The Federal Circuit has further directed that, at this stage of the litigation, the plaintiff is "entitled to all inferences in its favor on its theory [of infringement]." *Id.* at 1349. And district courts have been cautioned against resolving claim construction disputes at this stage. *Id.* (reversing the district court's dismissal because "Defendants' arguments boil down to objections to [Plaintiff's] proposed claim construction . . ., a dispute not suitable for resolution on a motion to dismiss").

On the other hand, it is not improper for a district court to dismiss an infringement claim

when there are no relevant facts in dispute and, in the context of the case, it is clear as a matter of law that the defendant cannot infringe. *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018) (affirming dismissal when the claims required a "book holder," the defendants' products were mobile cameras, and prosecution history estoppel barred a finding of infringement under the doctrine of equivalents); *Amgen Inc. v. Coherus Biosciences Inc.*, No. 17-546-LPS-CJB, 2018 WL 1517689, at *4 (D. Del. Mar. 26, 2018) (dismissing direct infringement claim when the plaintiff admitted there was no literal infringement and the undisputed facts established as a matter of law that prosecution history estoppel applied, which precluded a finding of infringement under the doctrine of equivalents), *aff'd*, 931 F.3d 1154 (Fed. Cir. 2019); *Cumberland Pharm. Inc. v. Sagent Agila LLC*, No. 12-825-LPS, 2013 WL 5913742, at *3 (D. Del. Nov. 1, 2013) (dismissing an infringement claim when the patent expressly required a formulation "free of a chelating agent," and the accused product admittedly contained a chelating agent).

### C. Indirect infringement

To state a claim of induced infringement that can survive a motion to dismiss, the complaint must plead (1) an underlying act of direct infringement (judged by the standard above), (2) facts plausibly supporting an inference that the defendant intended another to take the acts that are alleged to constitute infringement, and (3) facts plausibly supporting an inference that the defendant knew that the induced acts constituted infringement. *Nalco*, 883 F.3d at 1355-56; *DoDots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*, No. 18-98-MN, 2019 WL 3069773, at *2 (D. Del. July 12, 2019).

### D. Subject Matter Eligibility

Section 101 of Title 35 defines the categories of subject matter that are patent eligible. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The statutory language is broad, but the Supreme Court has recognized three exceptions to the categories of subject matter eligible for patenting: "laws of nature, natural phenomena, and abstract ideas." *Diamond v. Diehr*, 450 U.S. 175, 185 (1981). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Alice Corporation Party Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the Supreme Court established a two-step test for determining whether patent claims are invalid under 35 U.S.C. § 101. In step one, the court must "determine whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 573 U.S. at 218. This first step requires the court to examine "focus" of the claims, *i.e.*, their "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal marks and citation omitted).

In conducting step one, "while the specification may help illuminate the true focus of a claim, . . . reliance on the specification must always yield to the claim language in identifying that focus." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). Moreover, because "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012), "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 ("[D]escribing the claims at [too] high [a] level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."). "At step

7

one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [the court] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016). If the answer to the *Alice* step one inquiry is that the patent claims are not directed to a patent-ineligible concept, the claims are not ineligible under § 101 and the analysis is over.

If the claims are directed to a patent-ineligible concept, the court must proceed to step two, where it "consider[s] the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 573 U.S. at 217-18 (internal quotations and citations omitted).

At step two, "[i]t is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). Thus, "[m]erely reciting the use of a generic computer or adding the words 'apply it with a computer'" does not transform a patent-ineligible concept into patent eligible subject matter. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 223). Nor is there an inventive concept when the claims "[s]imply append[] conventional steps, specified at a high level of generality" to a patent ineligible concept. *Alice*, 573 U.S. at 222.

Conversely, claims pass muster at step two when the claim elements "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367 (citation and internal marks omitted). But "[t]he mere fact that something is disclosed in a piece of prior art . . . does not mean it was well-understood, routine, and conventional." *Id.* at 1369. Moreover, "an inventive concept can be found in the non-

conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2019). Whether an activity is well-understood, routine and conventional to a skilled artisan is a question of fact. *Berkheimer*, 881 F.3d at 1368.

"At both steps one and two, it is often useful to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 443 (D. Del. 2018).

**II.  REPORT AND RECOMMENDATION**

My Report and Recommendation regarding the pending motions was announced from the bench at the conclusion of the hearing as follows:

> . . . I'm prepared to issue a report and recommendation on the pending motions from the Faurecia defendants in case number 19-839 and the Magna defendants in case number 19-846. I will not be issuing a separate written report, but I will issue a report and recommendation that incorporates by reference my oral rulings today. I want to emphasize before I get into the rulings that while I'm not issuing a separate written report and recommendation, we have followed a full process for making the decisions I'm about to state. There was full briefing on the motions. There were additional submissions relating to the section 101 issues regarding, among other things, what each party view[s] as the most analogous case and there has been lengthy oral argument here today. All of the submissions and the arguments have been carefully considered. There are two patents at issue in this case, United States [Reissue Patent Number] RE47[,]220 and United States [Reissue Patent Number] RE47[,]232 which generally relate to a method [and] system for error-proofing in assembly systems. The patents share the same specification. These two cases are among nine infringement cases filed by plaintiff on May 6, 2019, and only one defendant group, the Magna defendants, moved to dismiss based on section 101. The Magna defendants have also moved to dismiss under rule 12(b)(6), as have the Faurecia defendants. The Faurecia defendants further move to strike the willfulness claim under rule 12(f) and for a more definite statement under rule 12(e).
>
> I'll begin with the Magna defendants' motion under section 101. I'm not going to read into the record my understanding of section 101 law. I have a legal standard that I've included in an earlier report and recommendation, [*CoolTVNetwork.com*], which is up on the Court's website and available by Westlaw. It's at 2019 [WL] 4415283. I incorporate that law and hereby adopt it into my report.

After reviewing the entire [record], hearing argument and applying the law as I understand it, I cannot conclude at this stage of the proceeding that the claims are directed to a patent ineligible subject matter, thus I recommend denying the Magna defendants' motion to dismiss on the basis of section 101, without prejudice to renew [at the] summary judgment stage. Both sides agree that claim 26 of the '232 Patent is representative for purposes of the 101 inquiry. Section 101 defines the categories of subject matter that are patentable[:] processes, machines, manufacture[s] and compositions of matter. The parties did not address in their briefing which category of patentable subject matter the representative claim belongs to, but on its face claim 26 appears to be directed to a machine.

Under step 1 of the *Alice* test Magna defendants argue that the claim is actually directed to the abstract idea of comparing and transmitting data, which they say is an unpatentable mental process. According to Magna's opening brief, the claim essentially describes one, receiving location and torque data from the claimed sensor and monitor; two, transmitting that information to the claimed electronic controller; three, electronically comparing that data to predetermined data values for [fastener] location and torque; and four, outputting a binary decision to enable fastening or not based on that comparison. In their view those elements merely automate a human's mental process.

Wildcat counters that the claim is directed to error-proofing improvements in the functioning of a specific technology, assembly systems and methods for assembling components together with multiple fasteners. Wildcat points out that the claims require specific structural components that operate in accordance with particular rules set forth in the claim. For example, the claim requires that the electronic controller only enable the fastening tool to enable human operation when certain conditions are met. According to Wildcat the specification explains that these rules are an advance over prior art systems which were prone to human error.

As an initial matter, I disagree with the Magna defendants' characterization about what the claim is directed to. The [F]ederal [C]ircuit explained in *McRO* that when conducting step 1 courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims. The [F]ederal [C]ircuit further explained in *Enfish* that courts must also avoid describing the claims at a high level of abstraction and untethered from the language of the claims. Here the Magna defendants' characterization of the claim fails to account for a claim requirement that is part of the basic thrust of the invention. Specifically, Magna's characterization omits the requirement that the electronic controller comply with a predetermined sequence and only enable the fastening tool to permit human operat[ion] when certain conditions set forth in the claim are met. The predetermined sequence is one way that the invention accomplishes its intended error-proofing function. Any articulation of the idea to which the claim is directed should refer to this requirement. Because the Magna defendants' purported abstract idea is untethered to this requirement, I cannot at

this time determine whether the claim is directed to an abstract idea. Several judges in this district, including me, have denied a motion to dismiss under 101 when the defendant failed to adequately characterize the idea to which the claims were directed, including when the defendant oversimplified the idea of the claims in its purported abstract idea or when the defendants' purported abstract idea failed to satisfactorily capture the substance of the claims. Because I'm not persuaded at this stage that the claim is directed to the abstract idea proposed by Magna, I will recommend rejecting Magna's 101 argument on that basis alone.

To complete the record, I will address the parties' other arguments. The [F]ederal [C]ircuit has indicated that it is also useful at step 1 to compare the claims at issue with claims that have been considered in other decisions. Accordingly I asked the parties for supplemental submissions setting forth their positions as to the most analogous [F]ederal [C]ircuit case. The Magna defendants assert that *Smart Systems* is the most analogous case. The representative claims in that case, which were all method claims, were generally related to a system and method for paying for a subway or bus ride with a credit card. The [F]ederal [C]ircuit compared claims there to lines of cases involving the collection, storage and recognition of data and lines of cases involving financial transactions in a particular field, which are both unpatentable abstract ideas.

The *Smart Systems* case distinguished the *McRO* case, because the claim in *McRO* was directed to specific rules that improve a technological process. As between *McRO* and *Smart Systems*, I think the nature of the claims at issue here is closer to *McRO*. Like the claims in *McRO*, the alleged improvement here is to eliminate certain human [decisions]. Like the claims in *McRO*, claim 26 here describes two specific requirements that must be applied to accomplish the stated goal[] of the invention to eliminate human error. These are the sequence requirement and the torque requirement. The application of these two requirements is what accomplishes the ultimate error-proofing result which is the goal of the invention. Magna's point that these requirements are nothing new is well taken, but in my view that argument is better directed to a 102 or 103 analysis. And unlike the claims in *Smart Systems*, claim 26 here cannot be fairly characterized as directed to the collection, storage and recognition of data or financial transactions in a particular field.

Finally, and if this was a written opinion, I would put this in a footnote, I note for the record that regardless of whether the claim at issue is a claim to a process or a claim to a machine, it includes a machine that transforms components by assembling them. While I am mindful of the [F]ederal [C]ircuit's warning that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea, I'm also mindful of the [S]upreme [C]ourt[']s statement that the machine or transformation test, while not the sole test, is a useful and important clue and investigative tool for determining whether claimed inventions satisfy 101. And the machine or transformation test appears to be satisfied here. Because I can't conclude at this stage that the claim is directed to

an abstract idea, I don't reach the parties' arguments regarding step 2, including their disputes over the necessity of claim construction and further factual development. I recommend denying the Magna defendants' motion to dismiss under 101 without prejudice to renew at a later stage.

Both defendant groups move to dismiss Wildcat's infringement claims for failure to state a claim[.] [F]or the reasons I will explain[,] I recommend denying both defendant groups' motion[s] to dismiss the direct infringement claims, granting both defendant groups['] motions to dismiss the induced infringement claims, denying the Faurecia defendants' motions to strike the willfulness claim and denying Faurecia defendant[s'] motion for a more definite statement. As I did with section 101, I'm not going to read into the record my understanding of the legal standard that applies to a motion to dismiss. I'm also not going to read in the record my understanding of the requirements to plead direct and indirect infringement. I incorporate the legal standards I set forth in the [*CoolTVNetwork.com*] case. Here, assuming the well-pled facts in the complaints to be true, I believe that Wildcat has just barely met the low threshold for alleging direct infringement by both defendant groups. Wildcat has alleged, with facts, that error-proofing is necessary in defendants' industries. Wildcat has alleged, with facts, that defendant[s] supply components to manufacturers that explicitly require error proofing. Wildcat has also alleged that a number of tooling systems on the market use error-proofing techniques. Wildcat has alleged, with facts, that Faurecia has a connection to at least one of the named error-proofing tooling systems on the market, Atlas Copco. Wildcat has alleged, with facts, that the use of an Atlas Copco system to assemble products infringes each element of the claims at issue. Wildcat also alleges a connection between Magna and another tool positioning system, the Advanced Manipulator tooling system. And Wildcat alleges facts showing that use of that system meets some elements of the claims. Wildcat also alleges that defendants' processes meet each element of the claims.

Taking all of this to be true, Wildcat's allegations, read in view of the rest of the complaint, sufficiently put the defendant groups on notice of what activity Wildcat accuses of infringement. Defendants argue that the complaints are deficient because they don't provide a particular example of an infringing method or device or a particular name of an infringing method or a device. Of course naming an accused device and alleging that it meets all of the elements of a claim is one way to plausibly allege infringement, but there is no rule that a complaint must identify an accused product by name. Here the claims relate to machines and processes that make products. The accusation of infringement is directed to the systems and operations used by defendants to assemble products. The defendants' machine[s] and processes may not even have a name and if they did, plaintiffs would have no way of knowing at this stage what it is.

Magna also points out that [Plaintiff's] complaint does not do an element by element analysis to show how use of the Advanced Manipulator tooling system infringes. However, that is not required under the law. According to the [F]ederal

12

[C]ircuit['s] [*Nalco*] case, there is no requirement that the plaintiff plead facts establishing that each element of an asserted claim is met.

Here, under these circumstances, given the uncomplicated nature of the asserted claims and the complaints' allegations about what type of conduct is alleged to be infringing, the complaints pass muster, but just barely.

Both defendant groups further move to dismiss the direct infringement allegations because the respective complaints don't specify which of the individual defendants in each defendant group did what. Plaintiff points out that the complaints allege that every defendant did everything. On this issue, I will take the approach taken by Judge Stark in the *Align* case cited by plaintiff. I'll assume as true plaintiff's allegations that each defendant did everything. That is enough to move forward against all of the defendants at this stage and only time will tell if plaintiff can prove it.

Both defendant groups move to dismiss the indirect infringement claims because Wildcat failed to allege an underlying act of direct infringement by another and failed to allege specific intent by the defendants to encourage another's infringement. The Faurecia defendants also argue that Wildcat failed to allege knowledge of another's infringement. On this issue I recommend granting the motion to dismiss the indirect infringement claims, because Wildcat has not plausibly alleged that anyone other than the defendants infringe the patents. Plaintiff's sole allegation relating to indirect infringement is that the defendants are instructing suppliers to practice the claimed invention, but there are no allegations suggesting that any suppliers even exist or any facts suggesting that if they did exist they practice the claimed invention. And there are no details about how defendants instruct any such suppliers. For these reasons, I conclude that the complaints fail to plausibly allege indirect infringement.

The Faurecia defendants also argue that the willful infringement allegations and request for enhanced damages should be stricken from the complaint under rule 12(f). In response, plaintiff cites the *Align* case from Judge Stark, which says that a plaintiff need only plausibly allege that the defendant knew of the patent[,] infringed knowing about the patent and did so knowing that its conduct amounted to infringement, but in that case the amended complaint adequately alleged pre-suit knowledge of the patent. Here the Faurecia defendants point out that Wildcat failed to allege pre-suit []knowledge and Wildcat does not appear to dispute this, so Wildcat cannot claim pre-suit willfulness.

Courts in this district are split on the propriety of allowing willfulness claims to proceed based solely on allegations of post-suit conduct. Having considered both lines of cases and having considered the issue in light of the federal rule of civil procedure 12(f) standard under which a Court may strike redundant, immaterial, impertinent or scandalous matter, I conclude that the willfulness allegation should not be stricken at this time.

Finally, the Faurecia defendants request, as an alternative to dismissing the complaint, that Wildcat be ordered to provide a more definite statement under rule 12(e). The Faurecia defendants argue that they manufacture hundreds of products utilizing hundreds of means of assembly and they don't know which means are being accused. I also deny this request. As I stated above, the allegations sufficiently put defendants on notice on what type of activity is alleged to be infringing. Moreover, plaintiff is not in a position to know at this time the names of any Faurecia assembly systems. I also note for the record that under the current scheduling order plaintiff's identification of accused products will occur on January 15, 2020.

In conclusion, I summarize my recommendations as follows. First, in case number 19-846 I recommend denying the Magna defendants' motion to dismiss under section 101. Second, in cases 19-839 and 19-846, I recommend denying both defendant groups['] motions to dismiss the direct infringement claims for failure to state a claim. Third, in cases 19-839 and 19-846 I recommend granting both defendant groups' motions to dismiss the indirect infringement claims for failure to state a claim. Fourth, in case number 19-839 I recommend denying the Faurecia defendants' motion to strike the willful infringement claim. Fifth, in case number 19-839 I recommend denying the Faurecia defendants' motion for a more definite statement.

And that concludes my report and recommendation.

With respect to the dismissal of Plaintiff's indirect infringement claims, I further recommend that Plaintiff be granted leave to amend the Complaints within 21 days.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: December 23, 2019

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE